IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MICHELLE NEMOEDE, as next friend of | § | |
| Deryn Tuz and Madison Tuz, and | § | |
| ATOYIA CLARK, as next fried of | § | |
| Randall Tuz and Damian Horn, as | § | |
| Substitute parties for | § | |
| DARREN JASON TUZ, Deceased | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:05-CV-0129 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant.[1] | § | |

### REPORT AND RECOMMENDATION
### TO REVERSE THE COMMISSIONER'S DECISION
### AND REMAND FOR FURTHER ADMINISTRATIVE ACTION

Plaintiffs MICHELLE NEMOEDE and ATOYIA CLARK bring this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying DARREN JASON TUZ's (plaintiffs' decedent) application for disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case REMANDED for proceedings consistent with this opinion.

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted as the defendant in this suit.

# I.
# THE RECORD

Plaintiffs' decedent (claimant) applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act on September 11, 2002, with a protective filing date of September 9, 2002. (Transcript [hereinafter Tr.] 52, 322). By his application, claimant alleged an onset date of August 9, 2002, and listed his impairments as severe seizures, M$^c$Ardle's syndrome,[2] rhabdomyolysis, anxiety disorder, and liver problems. (Tr. 52). The Social Security Administration denied benefits initially and upon reconsideration.

An administrative hearing was held before Administrative Law Judge (ALJ) Gary L. Vanderhoof on October 21, 2003. (Tr. 361-377). At the time of the hearing, claimant was 31 years old with a ninth grade education and past work experience as a disc jockey, a shirt presser, and a cook. (Tr. 18). On January 13, 2004, the ALJ rendered an unfavorable decision, finding claimant not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 17-24). The ALJ found that claimant had not engaged in substantial gainful activity since claimant's alleged onset date. (Tr. 18, 22, Finding No. 2). The ALJ further found claimant suffered from a seizure disorder, anxiety disorder, and M$^c$Ardle's syndrome, all of which were severe impairments, but not severe enough to meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. 19, 23, Finding Nos. 3 and 4). The ALJ assessed claimant as having a residual functional capacity (RFC) for a limited range of

---

[2]M$^c$Ardle's syndrome (also known as M$^c$Ardle's disease or phosphorylase deficiency) is a genetic disorder affecting the way muscles process glycogen. When individuals with McArdle's exercise or otherwise engage in strenuous activity, they experience muscle cramps, pain, and fatigue due to the breakdown of muscle cells. Resting helps to alleviate the symptoms. When severe exacerbations occur, M$^c$Ardle's patients may experience acute renal failure. (Tr. 297); (Plaintiff's Brief app. 1).

light work.³ (Tr. 20). Although the ALJ found that claimant could not perform any of his past work, he ultimately found, based upon vocational expert testimony, that claimant retained the ability to make a successful adjustment to other work existing in significant numbers in the national economy. (Tr. 21-22). Therefore, the ALJ found that claimant was not disabled. (Tr. 23, Finding No. 13).

Upon the Appeals Council's denial of claimant's request for review on March 10, 2004, the ALJ's determination that claimant was not under a disability became the final decision of the Commissioner. (Tr. 5-8). On March 14, 2004, claimant died at the age of 31 as a result of cardiomegaly, with seizures and McArdle's Syndrome listed as contributory factors. (Tr. 339). Plaintiffs now seek judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g) on behalf of claimant's minor children.

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, four elements of proof must be

---

³In his findings, the ALJ stated, "[C]laimant has the following functional capacity: to perform light work that allows for a sit/stand option and does not require working around unprotected heights or moving machinery. [C]laimant cannot perform work requiring driving, balancing or climbing of ladders, ropes or scaffolds and he is limited to moderate paced work." (Tr. 23, Finding No. 6).

weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

### III.
### ISSUES

The primary issue before the Court is whether the Commissioner's decision that claimant was not disabled is supported by substantial evidence. Plaintiffs also present the following subordinate issues:

1. The ALJ failed to fully and fairly develop the evidence by failing to adequately consider whether claimant's impairments equaled a listing;

2. The ALJ erred in failing to give proper weight to the opinion of claimant's treating physician that claimant was disabled;

3. The ALJ erred in determining that claimant's testimony and reports of pain and functional limitations lacked credibility; and,

4. The Commissioner erred in failing to give consideration to medical evidence submitted after the ALJ's decision.

IV.
MERITS

A.
Medical Equivalence

In their first point of error, plaintiffs allege the ALJ erred by failing to fairly and fully develop the record in regard to whether claimant's impairments equaled a listing at Step 3 of the five-step sequential analysis. Specifically, plaintiffs argue that while the ALJ considered whether claimant *met* any of a number of listings, he did not consider whether claimant *equaled* any of the listings. (Plaintiff's Brief at 12). Furthermore, plaintiffs argue that the ALJ erred by not obtaining a medical opinion in making the equivalence determination. (Plaintiff's Brief at 14).

Title 20 C.F.R. § 404.1526(a) states:

> We will decide that your impairment(s) is medically equivalent to a listed impairment in appendix 1 if the medical findings are at least equal in severity and duration to the listed findings. We will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the listed impairment. If your impairment is not listed, we will consider the listed impairment most like your impairment to decide whether your impairment is medically equal. If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment.

The Commissioner will consider an impairment as equaling a listed impairment only if *all* of the

criterion for a listed impairment are satisfied. *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531, 110 S.Ct. at 891. In *Zebley*, the Supreme Court recognized that the regulations created more restrictions at Step 3 than those created by statute. *Id.* at 533, 110 S.Ct. at 893. The listings exclude certain individuals, such as those "whose impairment would not prevent any and all persons from doing any kind of work, but which actually precludes the particular claimant from working, given its actual effects on him . . . [or] *who have unlisted impairments*, or combinations of impairments, that do not fulfill all the criteria for any one listed impairment." *Id.* at 534, 110 S.Ct. at 893 (emphasis added). However, individuals who fail to meet or equal a listing may still be found disabled at either Step 4 or Step 5. *Id.*

In his decision, the ALJ discussed several listed impairments, comparing those listings to claimant's severe impairments. The ALJ reviewed Listings 11.02 (convulsive epilepsy), 11.03 (nonconvulsive epilepsy), 11.04 (central nervous system vascular accident), 11.13 (muscular dystrophy), and 12.06 (anxiety related disorders). Because the record contained no EEG study or detailed description of a seizure pattern, the ALJ found that the evidence did not support a finding of equivalence with Listings 11.02, 11.03, or 11.04. Furthermore, the ALJ found that claimant's impairments did not equal Listing 11.13 because claimant did not experience *persistent* disorganization of motor function. Finally, the ALJ found that claimant's impairments did not equal Listing 12.06 because claimant did not experience marked limitation of function in

two or more areas, as required by that listing.[4] (Tr. 19).

Although the difference between meeting a listing and equaling a listing seems to be little more than one of semantics, the Commissioner has acted within his authority in creating strict regulations for a presumptive finding of disability, and the courts have upheld those regulations. The ALJ did not err in following the law in finding claimant's impairments did not equal a listing, and no abuse of discretion was committed.

Furthermore, the ALJ did not err by failing to obtain a medical opinion as to whether any or all of claimant's impairments in combination equaled a listing. Only those medical opinions made by a designated medical consultant—usually a state agency consulting physician—must be considered. 20 C.F.R. § 404.1526(b). Although (according to Social Security Ruling (SSR) 96-6p), the ALJ does have the discretion to obtain an additional medical opinion, *i.e.*, an opinion in addition to that of the state agency medical examiners, under certain circumstances, the ALJ is not required to do so. Under SSR 96-6p, an ALJ may rely on the signature of a state agency physician on the Disability Determination and Transmittal Form in lieu of obtaining testimony regarding whether a claimant's impairments are equivalent to a listing. Such signature acts as an assurance that a medical professional has considered all of the evidence of record and has determined that the claimant's impairments do not meet or equal a listing. The only situations requiring an ALJ to obtain an updated expert opinion is when the signs, symptoms, and laboratory tests in the case record suggest to the ALJ that a finding of medical equivalence may be reasonable, despite the state agency's findings, or when additional medical evidence is submitted after the agency's determination that the ALJ believes could change the equivalency

---

[4] The ALJ found that claimant had only mild limitations in his activities of daily living, in social functioning, and in maintaining concentration, persistence, and pace, and that claimant had never experienced any periods of decompensation. (Tr. 19).

determination. SSR 96-6p, 1996 WL 374180, at *4.

In this case, the record contains Disability Determination and Transmittal forms at both the initial and reconsideration levels, both of which bear signatures of Texas Department of Disability Services (DDS) physicians. The ALJ could rely on those signatures as a determination by medical experts that claimant's impairments did not equal a listing. Determining that no additional medical opinion was necessary was completely within the discretion of the ALJ. Claimant submitted no new evidence between the time DDS rendered its decisions and the ALJ hearing, and, apparently, the ALJ did not believe the medical records indicated it would be reasonable to find claimant's impairments equal to a listing. Hence, the ALJ was free to rely on the DDS determination and did not err by failing to obtain testimony from a medical expert on whether claimant's impairments equaled a listing.

B.
Treating Specialist's Opinion

In their second point of error, plaintiffs allege the ALJ erred by failing to give proper weight to the opinion of claimant's treating specialist, Dr. Douglas Lewis, D.O. Normally, a treating physician's opinion regarding the nature and severity of a claimant's impairments and limitations should be accorded great, if not controlling, weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The treating physician's opinion should be given controlling weight if it is well-supported by objective medical evidence, such as diagnostic tests, and it is not inconsistent with other substantial medical evidence in the record. *Id.* Additionally, "a specialist's opinion is to be accorded greater weight than a non-specialist's opinion." *Moore v. Sullivan*, 919 F.2d 901 (5th Cir. 1990). However, a treating physician's opinion as to whether a claimant is disabled is not considered a medical opinion, and, therefore, is not entitled to controlling weight. 20 C.F.R.

§§ 404.1527(e), 416.927(e). The ultimate determination of disability is reserved to the Commissioner, although the Commissioner must still give deference to the opinion of a treating physician, even if such opinion is not entitled to controlling weight. *Newton*, 209 F.3d at 456.

The ALJ may reject the medical opinion of a treating physician only if medical evidence exists supporting a contrary conclusion. *Id.* at 455. When good cause is shown, an ALJ may give little or no weight to the opinion of a treating physician; good cause to discount a treating physician's opinion relative to other medical opinions may exist "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 455-456. Before declining to give a treating physician's opinion controlling weight, the ALJ must first consider the following factors:

>   (1) the physician's length of treatment of the claimant,
>   (2) the physician's frequency of examination,
>   (3) the nature and extent of the treatment relationship,
>   (4) the support of the physician's opinion afforded by the medical evidence of record,
>   (5) the consistency of the opinion with the record as a whole, and
>   (6) the specialization of the treating physician.

*Id.* at 456.

In his decision, the ALJ made the following determination:

> The opinion of Dr. Lewis is only partially supported by the objective medical evidence and is contrary to the other medical opinions in the record. More recent medical records from another treating physician, Benjamin Glover, M.D., indicate that the claimant's medical condition is currently stable. . . .
>
> Thus, while I am considering the opinion of Dr. Lewis, I give greater weight and credibility to the other medical opinions in the record and they are more consistent with the objective medical findings.

The ALJ erred in finding Dr. Lewis' opinion inconsistent with other medical opinions and the record as a whole. The opinion of Dr. Glover, upon which the ALJ relies, is nothing more than a simple chart notation regarding a single visit on June 10, 2003. (Tr. 247). In comparison with the depth and length of Dr. Lewis' treatment relationship,[5] as well as Dr. Lewis' specialization in neurology, Dr. Glover's opinion is not an opinion entitled to greater weight than Dr. Lewis' opinion. Further, Dr. Glover's opinion is not inconsistent with Dr. Lewis' opinion. Given the intermittent nature of McArdle's syndrome and claimant's seizure disorder, the fact that claimant may have been stable at a certain point in time does not contradict a finding that, overall, claimant's condition was severe. Likewise, "stable" indicates no change in a condition, and does not mean an improvement in that condition. *Dorland's Medical Dictionary* 1567 (28th ed. 1997). Therefore, a notation that claimant's McArdle's was stable does not contradict any of Dr. Lewis' medical opinions.

Moreover, Dr. Glover was mistaken in his belief that claimant had suffered no seizures after July 2002: the medical records from Hereford Regional Medical Center, as well as from Dr. Lewis' office, reflect claimant suffered a seizure on September 24, 2002. (Tr. 221-225, 242-243). Thus, the ALJ was mistaken in relying on a single statement by Dr. Glover, which itself was based on mistaken facts, over the opinion of Dr. Lewis.

Although the ALJ did not err by failing to give controlling weight to Dr. Lewis' opinion that claimant was completely disabled, he did err in failing to give proper weight to Dr. Lewis' medical opinion as to the impact claimant's impairments had upon his day-to-day functioning. No contradictory medical opinion existed in the evidence. Therefore, Dr. Lewis' opinion as to

---

[5] In his letter of April 3, 2003, Dr. Lewis stated he had been treating claimant, primarily for his epilepsy, since April 1997. (Tr. 239). The medical records indicate that Dr. Glover had a treatment relationship with claimant for approximately one year.

the nature and severity of claimant's impairments and limitations was entitled to controlling weight.[6] Dr. Lewis' opinion was not, as the ALJ alleged, inconsistent with claimant's daily functioning. As discussed below, the ALJ misinterpreted evidence in the record, misreading claimant's daily activity questionnaires to establish a greater level of functioning than actually existed or was supported by the record. The ALJ did incorporate, somewhat, Dr. Lewis' opinion as to functional limitations in the ALJ's RFC determination.[7] (Tr. 23, Finding No. 6, 239). However, because no contradictory medical evidence existed in the record and because the ALJ did not show good cause for failing to give Dr. Lewis' medical opinion controlling weight, he committed error.

C.
Claimant's Credibility

In their fourth point of error, plaintiffs allege the ALJ erred in finding claimant lacked credibility. In evaluating the credibility of a claimant's alleged symptoms, including pain, the ALJ must consider seven factors in addition to objective medical evidence. Those factors are:

(1) The individual's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate and aggravate the symptoms;
(4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain

---

[6]In a form for the Texas Department of Human Services, Dr. Lewis stated, in regard to claimant's prognosis, "No cure for muscle disease. The seizure disorder can continue to have breakthrough seizures which may trigger acute exacerbation of muscle disease risking renal failure each time. [I]n addition, exacerbations are unpredictable and potentially fatal depending on [the] situation." (Tr. 241). Dr. Lewis' opinion is supported by the record, which reflects claimant suffered seizures resulting in acute renal failure, despite being on seizure medication. (Tr. 160, 195).

[7]The ALJ failed to incorporate the intermittent nature and unpredictable exacerbation of claimant's impairments in his disability determination, which further undermines the ALJ's decision. When presented with a condition that by its very nature is intermittent, the ALJ must take such a factor into consideration in determining whether a claimant can not only obtain, but also *maintain*, employment. *Watson v. Barnhart*, 288 F.3d 212, 217-218 (5th Cir. 2002). By erring in failing to properly credit Dr. Lewis' opinion and incorporate such into his decision, the ALJ committed further error because he made no finding as to claimant's ability to maintain employment. Moreover, the ALJ erred by not addressing claimant's ability to maintain employment in light of the vocational expert (VE) testimony. The ALJ posed a hypothetical to the VE regarding the ability of someone with an RFC for light work in an unskilled position to maintain employment if he had to miss work several days a month; the VE indicated that such a person could not maintain work. (Tr. 375-376).

     or other symptoms;
(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
(6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
(7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). "Pain alone can be disabling, even when its existence is unsupported by objective medical evidence if linked to a medically determinable impairment." *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A 1981) (citations omitted). Thus, "the ALJ must consider subjective evidence of pain and disability as testified to by the claimant; failure to give consideration to the subjective evidence of pain and disability as testified to by the [claimant] is reversible error." *Id.*

  While the Commissioner's interpretive rulings do not carry "the force and effect of law, when an agency violates its own rules and prejudice results, the proceedings are tainted and any actions resulting from the proceeding cannot stand." *Prince v. Barnhart*, 418 F.Supp.2d 863, 870 (E.D. Tex. 2005) (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)).

  The ALJ made the following finding as to claimant's credibility:

> The claimant's testimony and reports of pain and functional limitations was not supported by the medical evidence overall and therefore, lacked credibility.
>
> Specifically, while the claimant alleges severe disabling muscle pain, the objective medical records indicate that his muscle pain is directly related to his seizures and resolves after a few days. As long as his seizures are controlled the claimant does well. The claimant experiences occasional exacerbations of his condition when he has seizures. The exacerbations are so severe that he must be hospitalized for several days to control his symptoms. He also experiences kidney failure on these occasions.

(Tr. 20). The ALJ apparently failed to evaluate claimant's credibility using SSR 96-7p and did

not mention any specifics regarding claimant's hearing testimony.[8]  There is not even a mention of SSR 96-7p or the relevant regulations to show the ALJ considered either in rendering his decision.  Nothing in his decision provides an indication the ALJ properly evaluated claimant's credibility, even if he simply failed to articulate such evaluation.  The ALJ merely states that claimant's allegations are not credible in light of the medical evidence.[9]

Although in the overwhelming majority of cases the ALJ's credibility determination would be supported by substantial evidence and thus, would be immune from reversal and remand on the issue of credibility, that is not the case here.  The ALJ only analyzed claimant's complaints of pain in light of the objective medical evidence, failing to evaluate claimant's credibility based on the criteria set out in the regulations.  This is unlike cases where the ALJ evaluated the subjective allegations, *i.e.*, discussed claimant's testimony, and gave some indication that he considered the record as a whole, but ultimately decided the allegations were not credible in light of the medical evidence.  Thus, the ALJ could not merely state the medical evidence did not support claimant without analyzing the subjective evidence.

Claimant testified to his limitations at the hearing.  Claimant was consistent in his statements regarding his need for frequent rest when his muscles locked up. (Tr. 89-97A).  His girlfriend provided a letter with examples of the impact of claimant's impairments. (Tr. 103-106).  Dr. Lewis stated several times that claimant's ability to work was dubious in light of his

---

[8]The closest the ALJ came to discussing specifics about claimant's testimony was in his discussion of whether or not claimant's anxiety disorder met or equaled a listing. (Tr. 19).  However, even there, it is clear the ALJ failed to closely consider the record.  The ALJ did not mention claimant's statements that he required frequent rest after even a few minutes of any of the activities listed in the decision. (*See* Tr. 89-97A).

[9]Even then, however, the ALJ acknowledges medical evidence that supports claimant's allegations, *i.e.*, recounting the severe exacerbations requiring hospitalization for extended periods.

impairments.[10] (Tr. 239-243). Yet, the ALJ failed to discuss, or apparently, even consider, any of this information of record in rendering his credibility determination. The Fifth Circuit does not require formalistic compliance with rules to uphold an ALJ's opinion. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). However, *some* indication must exist, be it even a mere mention of the relevant regulations or ruling, that the ALJ complied with the rules and considered all of the evidence. There is no such indication here.

In light of the record as a whole, the consistency of claimant's allegations, the lack of contradictory medical evidence, and Dr. Lewis' statements regarding claimant's limitations, the ALJ did not commit harmless error in failing to properly evaluate claimant's subjective complaints. Therefore, this case must be remanded for a proper evaluation of the credibility of claimant's alleged pain and other symptoms.

### D.
### Post-Decision Medical Records

In their final point of error, plaintiffs allege the Commissioner erred in failing to consider medical records sent to the Appeals Council before the filing of the instant suit. This allegation is without merit. The records plaintiffs allege the Commissioner failed to consider relate to claimant's death on March 14, 2004, four days after the Appeals Council denied review of the ALJ's decision. Furthermore, the records were not mailed to the Appeals Council until July 2, 2004, almost four months after the Appeals Council denied review. (Tr. 336). The Appeals Council must consider additional evidence submitted while a request for review *is pending* under certain circumstances. *See* 20 C.F.R. § 404.970(b). Likewise, records submitted for the first

---

[10] For example, after an appointment on October 10, 2002, Dr. Lewis noted, "It has been relatively amazing thus far, that [claimant] has been able to work as long as he has. The unpredictability of the seizure disorder, as well as the McArdle's syndrome would leave him as a somewhat unreliable employee." (Tr. 243).

time to the Appeals Council while a request for review is pending become a part of the record for purposes of appeal. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). However, in this case, the records were not submitted until several months *after* the Appeals Council rendered its decision. Therefore, the Commissioner did not err by failing to consider these records.

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be REVERSED and the case be REMANDED for further administrative proceedings.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this <u>8th</u> day of September 2008.

                                                                          _____
                                                                          CLINTON E. AVERITTE
                                                                          UNITED STATES MAGISTRATE JUDGE

### * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by

electronic means, Fed. R. Civ. P. 5(b)(2)(D).  When service is made by mail or electronic means, three (3) days are added after the prescribed period.  Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).